# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 7 |
| | : | |
| AMC INVESTORS, LLC, | : | Bankr. Case No. 08-12264-CSS |
| | : | |
| Debtor. | : | |
| | : | |
| IN RE: | : | Chapter 7 |
| | : | |
| AMC INVESTORS II, LLC, | : | Bankr. Case No. 08-12265-CSS |
| | : | |
| Debtor. | : | |
| | : | |
| EUGENIA VI VENTURE HOLDINGS, LTD., ON BEHALF OF AMC INVESTORS, LLC AND AMC INVESTORS II, LLC, | : | |
| | : | Civ. No. 15-934-RGA |
| Appellants-Plaintiffs, | : | |
| v. | : | (Consolidated) |
| | : | |
| MAPLEWOOD HOLDINGS LLC, MAPLEWOOD MANAGEMENT LP, MAPLEWOOD PARTNERS LP, ROBERT V. GLASER, AND ROBERT J. REALE, | : | |
| | : | |
| Appellees-Defendants. | : | |

---

## MEMORANDUM

Mark D. Collins, Esq., Marcos A. Ramos, Esq., and Cory D. Kandestin, Esq., Richards Layton & Finger, P.A., Wilmington, DE; Mitchell A. Karlan, Esq., Gibson, Dunn & Crutcher LLP, New York, NY; and Jeremy L. Graves, Esq., Denver, CO, attorneys for Appellant Eugenia VI Venture Holdings, Ltd. for and on behalf of Debtors AMC Investors, LLC and AMC Investors II, LLC

Curtis S. Miller, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; and Brian P. Miller, Akerman LLP, Miami, FL, attorneys for Appellees MapleWood Holdings, LLC, MapleWood Management LP, MapleWood Partners LP, Robert V. Glaser, and Robert J. Reale.

June 22, 2016

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Pending before this Court are consolidated appeals by appellant Eugenia VI Venture Holdings, Ltd. ("Eugenia"), on behalf of Chapter 7 debtors AMC Investors, LLC ("Investors") and AMC Investors II, LLC ("Investors II" and together with Investors and Eugenia, "Plaintiff"), from a final judgment of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The final judgment followed the Bankruptcy Court's denial of Plaintiff's motion for partial summary judgment as to certain affirmative defenses asserted by appellees MapleWood Holdings LLC, MapleWood Management LP, MapleWood Partners LP, Robert V. Glaser, and Robert J. Reale (together, "Defendants"). *See Eugenia VI Venture Holdings, Ltd. v. Maplewood Holdings LLC (In re AMC Investors, LLC)*, 524 B.R. 62 (Bankr. D. Del. 2015). The Court has had regular briefing, oral argument, and supplemental letters.

## I.   BACKGROUND

AMC Computer Corp. ("Computer") was a hardware and services company. In 2000, private investment funds collectively referred to as "MapleWood" invested in Computer through Investors and Investors II ("Debtors") in exchange for equity shares. Defendants were officers, directors, and/or shareholders of Computer. Plaintiff asserts that Defendants dominated and controlled the Debtors at all relevant times, and, prior to the commencement of this action, there were no non-Defendants who worked for Debtors or otherwise exercised any measure of control over Debtors. (*See* D.I. 15 at 2 & n.2). Pursuant to a January 30, 2003 credit agreement between Eugenia and Computer, Eugenia extended up to $16 million in credit to Computer. The loan was secured by Computer's working capital, and each of Debtors executed an unconditional guaranty of Computer's obligations to Eugenia. In May 2005, Computer became insolvent, and its board of directors voted to cease operations and to approve an assignment for the benefit of creditors.

1

Eugenia declared a default under the credit agreement and demanded immediate payment from Computer, as well as payment from Debtors pursuant to the guarantees. Eugenia filed suit against Debtors in New York state court to collect on the guarantees and was awarded a $10.7 million judgment in July 2007 (the "New York Judgment"). Debtors appealed a portion of the award. Before the appellate court ruled on that appeal, on September 30, 2008, Eugenia filed Chapter 7 involuntary petitions against Debtors in the Bankruptcy Court. Debtors' motion to dismiss the involuntary petitions was ultimately denied, and orders for relief under Chapter 7 were entered on June 5, 2009. A Chapter 7 Trustee was appointed the same day.

From 2005 through 2007, Eugenia brought seven additional related, but unconsolidated, suits against Defendants in the United States District Court for the Southern District of New York ("S.D.N.Y. Court"), suing both directly and derivatively on behalf of Computer, and alleging fraud and breaches of fiduciary duty in connection with Computer's default under the credit agreement. In 2010, the S.D.N.Y. Court dismissed those actions upon Defendants' motion for summary judgment. *See In re Eugenia VI Venture Holdings, Ltd. Litigation,* 649 F.Supp.2d 105 (S.D.N.Y. 2008). In 2010, the Second Circuit affirmed the ruling. *See Eugenia VI Venture Holdings, Ltd. v. Glaser*, 370 F. App'x. 197 (2d Cir. 2010). Eugenia brought several other causes of action against Defendants in New York state courts. (*See* D.I. 35, 36).

On June 3, 2011, the Bankruptcy Court granted Eugenia, as Debtors' sole creditor in the Chapter 7 cases, derivative standing to pursue causes of action against Defendants on behalf of Debtors. The same day, Eugenia filed a complaint on behalf of each Debtor, initiating two adversary proceedings against Defendants (together, the "Adversary Proceedings"). *See* Adv. Proc. Nos. 11-52317-CSS and 11-52318-CSS. The complaint alleges that Defendants breached their fiduciary duties of good faith, due care, and loyalty to Debtors by instituting, directing

2

and/or failing to discover and prevent massive fraud by the board and management of Computer.
(*See* Adv. D.I. 1).[1] The complaint further alleges that Debtors were (i) damaged when their
entire investment in Computer became worthless and the New York Judgment was entered on
the guarantees, and (ii) exposed on the guarantees only because Defendants failed to properly
discharge their fiduciary obligations to Debtors. (*See id.*). Defendants answered together (Adv.
D.I. 44), raising various affirmative defenses, and Plaintiff subsequently filed two motions for
partial summary judgment. In the first motion, Plaintiff sought partial summary judgment, on
behalf of Investors II only, as to Defendants' timeliness defenses based on the statute of
limitations and laches. (*See* Adv. D.I. 145).[2] The second motion addressed Defendants'
collateral estoppel (issue preclusion) and *res judicata* (claim preclusion) defenses, which were
based on the prior litigation in the S.D.N.Y. Court. (*See* Adv. D.I. 149).

In ruling on Debtors' motions, the Bankruptcy Court first undertook a thorough analysis
of Defendants' collateral estoppel and *res judicata* defenses, finding that (i) the prior federal
litigation in the S.D.N.Y. Court raised the same claims as the Adversary Proceedings for

---

[1] All docket references are to *Eugenia VI Venture Holdings, Ltd. v. MapleWood Holdings LLC*,
Adv. Proc. No. 11-52317-CSS (Bankr. D. Del.), cited herein as "Adv. D.I. ___."

[2] Regarding the timeliness defenses, Plaintiff sought partial summary judgment on behalf of
Investors II only, and not on behalf of Investors. On appeal, Plaintiff challenges the Bankruptcy
Court's ruling on behalf of both Investors and Investors II. Defendants assert that Casita L.P.
("Casita"), Eugenia's affiliate and a member of Investors, knew of the facts constituting the basis
for this action and had standing to bring this cause of action on behalf of Investors at any time
after May 2005. (*See* D.I. 25 at 19). Under Delaware law, "[a] member or an assignee of a
limited liability company interest may bring an action in the Court of Chancery in the right of a
limited liability company to recover a judgment in its favor if managers or members with
authority to do so have refused to bring the action or if an effort to cause those managers or
members to bring the action is not likely to succeed." 6 Del. C. § 18-1001. Although not
addressed by the Bankruptcy Court, if Casita was a member of Investors with knowledge of the
misconduct in 2005, then it appears that judgment against Eugenia in regard to Investors would
be appropriate because the statute of limitations would not have been tolled.

purposes of *res judicata*; (ii) the Second Circuit's determination that Computer was already

insolvent when it entered into the credit agreement was entitled to collateral estoppel effect such

that Eugenia could not demonstrate that thereafter Defendants' mismanagement rendered

Computer insolvent; and (iii) that a genuine issue of material fact existed as to whether Debtors

had a full and fair opportunity to participate in the earlier litigation before the S.D.N.Y. Court.

*See AMC*, 524 B.R. at 70-80.  Regarding Defendants' timeliness defenses, the Bankruptcy Court

observed that while a court of equity is not bound by the legal statute of limitations, "[e]quity

follows the law and in appropriate circumstances will apply a statute of limitations by analogy."

*Id*. at 80 (citing *In re Lyn*, 483 B.R. 440, 452 (Bankr. D. Del. 2012)).  Because breach of

fiduciary duty claims are equitable claims bearing close resemblance to legal claims, the

Bankruptcy Court concluded that a statute of limitations analysis was appropriate.  *See id.* (citing

*Vichi v. Koninklijke Philips Elec. N.V.*, 2009 WL 4345724, at *16 (Del. Ch. Dec. 1, 2009)).

The parties agree that Delaware's three-year statute of limitations for breach of fiduciary

duty claims applies, and that the limitations period begins to run from the occurrence of the

alleged wrong.  Plaintiff alleges that Defendants' mismanagement of Computer from January

2003 to May 2005 harmed Investors II.  *See AMC*, 524 B.R. at 80.  Because Plaintiff did not

bring this action until June 2011, Plaintiff's claims are time-barred unless a basis for tolling the

statute of limitations is demonstrated.  The Bankruptcy Court held that the "record on summary

judgment [did] not justify tolling the statute of limitations." *Id*. at 81.  Under each of Delaware's

three tolling doctrines – (1) inherently unknowable injuries, (2) fraudulent concealment, and (3)

equitable tolling following breach of fiduciary duties – the statute of limitations begins to run

"upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts

sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued,

would lead to the discovery of such facts." *Id.* at 80-81 (quoting *Vichi*, 2009 WL 4345724, at

*17). The Bankruptcy Court held that "Eugenia clearly knew about Defendants' conduct by

June 2005, when it commenced the litigation in the Southern District of New York. Therefore,

the tolling mechanisms recognized by Delaware courts do not apply." *Id.*

The Bankruptcy Court also rejected Plaintiff's argument that its lack of standing

prevented it from bringing the action earlier, and that the statute of limitations should be tolled

on that basis. The Bankruptcy Court observed that Delaware's Court of Chancery has clarified

that a plaintiff's lack of standing is not an independent basis for tolling the statute of limitations.

*Id.* at 81 (citing *Bren v. Capital Realty Grp. Senior House., Inc.*, 2004 WL 370214, at *5 (Del.

Ch. 2004)). With respect to Plaintiff's argument that the statute of limitations should be tolled

under the "adverse domination" doctrine, which is recognized in other jurisdictions as a basis for

tolling breach of fiduciary duty actions, the Bankruptcy Court noted that this doctrine is not

recognized by Delaware courts. *See id.* (citing *In re Marvel Entm't Grp., Inc.,* 273 B.R. 58, 76

(D. Del. 2002) ("Nor can the court find any Delaware case that recognizes the adverse

domination doctrine as a tolling mechanism")). Because Plaintiff failed to establish as a matter

of law that any tolling doctrine was available to toll the statute, the Bankruptcy Court held that

Plaintiff could not prevail on its motion for summary judgment as to Defendants' timeliness

defenses and denied summary judgment (the "Summary Judgment Order"). *See id.* at 81.

Based on the ruling, the parties stipulated that Defendants were entitled to summary

judgment dismissing the complaint as untimely. (Adv. D.I. 189, 190). After permitting the

parties to supplement the record, on September 30, 2015, the Bankruptcy Court entered an Order

and Final Judgment ("Final Judgment") granting summary judgment in favor of Defendants on

the timeliness defenses, and, accordingly, final judgment in favor of Defendants. (Adv. D.I. 201

(dismissing complaint with prejudice)).  On October 13, 2015, Eugenia filed a timely notice of appeal.  (D.I. 1).

## II.   CONTENTIONS

Plaintiff raises several issues on appeal.  Plaintiff's main argument is that the Bankruptcy Court erred in finding that, because "Eugenia clearly knew about Defendants' conduct by June 2005, when it commenced the litigation in the Southern District of New York," none of Delaware's tolling doctrines were available to Debtors.  *See AMC*, 524 B.R. at 81.  Plaintiff argues that the Bankruptcy Court did not articulate any reason why Eugenia's knowledge should be imputed to Debtors for statute of limitations purposes and incorrectly applied Delaware law to the undisputed facts of the case.  (*See* D.I. 15 at 7-8).  Plaintiff argues that Debtors could not have known of Defendants' breaches of fiduciary duty until, at the earliest, a Chapter 7 Trustee was appointed on June 5, 2009; until that time, Debtors were controlled by Defendants, which Plaintiff alleges were faithless fiduciaries.  (*See id.* at 8).  Plaintiff further argues that Delaware law does not run the statute of limitations against corporate entities like the Debtors until at least one innocent party has knowledge of the facts constituting the cause of action and obtains standing to sue on its behalf; here, the Bankruptcy Court acknowledged that "Eugenia did not have standing to pursue the[] derivative claims during the applicable limitations period."  (*AMC*, 524 B.R. at 80; *see id.* at 7).  Finally, Plaintiff asserts that the Bankruptcy Court incorrectly failed to apply tolling doctrines designed to avoid the harm caused by "adverse domination" of Debtors.  (D.I. 15 at 8).

Conversely, Defendants argue that there is no legal basis for the tolling of the statute of limitations because under Delaware law, tolling ceases upon any plaintiff who had the right to enforce the rights of the Debtors becoming aware of the breach.  (D.I. 25 at 14).  Here, Defendants argue, all parties knew of the facts constituting the basis for this action by June 2005,

6

and "there can be no doubt that Eugenia and Casita also had the right to bring claims on behalf of the Debtors during that time frame." (*Id.* at 10). Defendants do not argue that Casita had standing to bring a cause of action on behalf of Investors II, an LLC in which it was not a member, but argue instead that (i) either of Investors or Investors II could have brought their own claims against Defendants, and (ii) that Defendants offered to turn over the equity interests of both Debtors to Eugenia in June 2005, which offer, Defendants assert, Eugenia did not accept. (*See id.*). Defendants argue that the Bankruptcy Court correctly held that a plaintiff's lack of standing is not an independent basis to toll the statute of limitations and the adverse domination doctrine is not recognized by Delaware courts. (*Id.* at 16, 20).

## III. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from a final judgment of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). As a general rule, federal appellate courts have no jurisdiction under 28 U.S.C. § 1291 to review interlocutory decisions such as a denial of summary judgment. *See Walker v. Horn*, 286 F.3d 705, 709 (3d Cir. 2002). The parties created a basis for appellate jurisdiction by stipulating to the entry of a final judgment, which the Bankruptcy Court approved. (Adv. D.I. 190, 201). The parties advised the Bankruptcy Court that they would be supplementing the record "with some discovery materials that weren't before Your Honor at the time you made the decision [to deny partial summary judgment]." (Adv. D.I. 187 at 5). The Bankruptcy Court allowed this procedure despite its concern that it was "inviting reversal . . . if you include facts and discovery materials that weren't before the Court at the time I made the ruling." (*Id.*). The Bankruptcy Court's concern was reasonable. On appeal, various issues have been raised in the briefing as a basis for reversal or affirmance which were not fully developed before the Bankruptcy Court. For example, Defendants argue that Eugenia had an opportunity to take over Investors and Investors II, with no strings attached, in June 2005, and

7

Eugenia failed to accept Defendants' letter offer for no apparent reason. (Adv. D.I. 147 at 7, ¶ 19; 6/3/16 Hr'g. Tr., D.I. 34 at 46-48). Eugenia (relying solely upon argument of counsel) disputed having received the letter offer (*see* D.I. 29 at 6, n.5), even though there seemed to be documentary evidence to the contrary. (*See* D.I. 36). Although the letter offer was designated in the record on appeal (D.I. 24 at Ex. 18), there is no affidavit attesting that it was sent or received, and apparently the letter was not designated as part of the record below until after Final Judgment. (*See* D.I. 34 at 63:15-25). The Bankruptcy Court did not address or rule on this argument. On appeal, Eugenia argues that certain breaches of fiduciary duty occurred postpetition, and that these claims indisputably fell within the statutory period. (*See* D.I. 15 at 21-24). However, Plaintiff refers to this argument below, if at all, in a mere footnote in its reply in support of summary judgment. (*See* Adv. D.I. 151 at 3, n.2). Not surprisingly, the Bankruptcy Court did not address or rule on this argument either.

In reviewing the Bankruptcy Court's decision as to whether to grant or deny summary judgment, the district court's standard of review is plenary. *See Rosen v. Bezner*, 996 F.2d 1527, 1530 n.2 (3d Cir. 1993). In an adversary proceeding, summary judgment is appropriate if the moving party can "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Bailey v. United Airlines*, 279 F.3d 194, 198 (3d Cir. 2002). When ruling on a motion for summary judgment, the Court must accept the non-movant's version of the facts as true and resolve conflicts in the non-movant's favor. *See Big Apple BMW, Inc. v. BMW of N. Amer., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has done so, however, the non-moving party "will not be able to withstand a motion for

summary judgment merely by making allegations; rather, the party opposing the motion must go

beyond its pleading and designate specific facts by use of affidavits, depositions, admissions, or

answers to interrogatories showing there is a genuine issue for trial." *In re Ikon Office Solutions,*

*Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).

## IV.    DISCUSSION

As noted by this Court in *Marvel*, adverse domination is not a tolling doctrine recognized

by Delaware. *See Marvel*, 273 B.R. at 58. As set forth in *Bren*, a plaintiff's lack of standing is

not an independent basis to toll the statute of limitations either. *See Bren*, 2004 WL 370214, at

*5.

With respect to tolling doctrines that are recognized by Delaware, the Bankruptcy Court

applied the proper standard for purposes of the statute of limitations analysis. The statute begins

to run "upon the discovery of facts constituting the basis for the cause of action or the existence

of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if

pursued, would lead to the discovery of such facts." *AMC*, 524 B.R. at 80-81 (quoting *Vichi*,

2009 WL 4345724, at *17). However, the Bankruptcy Court erred in finding that none of these

tolling doctrines applied because "Eugenia clearly knew about Defendants' conduct by June

2005 . . ." *See id.* at 81. The inquiry should not have turned on Eugenia's knowledge; the

relevant inquiry turns on a plaintiff's ability to discover the claim, and here, Debtors are the only

plaintiffs with a breach of fiduciary duty claim against Defendants. *See, e.g., Dean Witter P'ship*

*Litig.*, 1998 WL 44256, at *20-21 (Del. Ch. July 17, 1998), *aff'd* 725 A.2d 441 (Del. 1999).

Delaware law required the Bankruptcy Court to evaluate when Debtors discovered facts

constituting the basis for the breach of fiduciary duty claims, or the existence of facts sufficient

to put Debtors on inquiry notice. *See Vichi*, 2009 WL 4345724 at *17. Complicating this

inquiry is Plaintiff's allegation that every individual connected to Debtors, and owing them

9

fiduciary duties, was breaching those duties. *See Kahn v. Seaboard Corp*, 625 A.2d 269, 275 (Del. Ch. 1993) ("Reasonable reliance upon the competence and good faith of others who have assumed legal responsibilities towards a plaintiff have not infrequently been held sufficient to toll the running of an applicable statute of limitations."). Eugenia's knowledge at the critical time should not be imputed to Debtors. Thus, a determination that none of Delaware's tolling doctrines were available to Debtors was incorrect to the extent that the determination was based solely on Eugenia's knowledge. That basis being the only basis for the Bankruptcy Court's denial of the partial summary judgment motion, it therefore cannot be the basis for sustaining the Final Judgment.

Based on the foregoing, including the unusual way this appeal was generated, with the parties raising arguments based on supplemental materials designated to the record following entry of the Summary Judgment Order,[3] I will reverse the grant of summary judgment in favor of Defendants' timeliness defenses as set forth in the Final Judgment, and remand for further proceedings not inconsistent with this memorandum opinion. This is an extremely limited holding: a determination that none of Delaware's tolling doctrines are available to Debtors was incorrect to the extent that this determination was based solely on Eugenia's knowledge. Eugenia's knowledge is not imputed to the Debtors for purposes of the statute of limitations analysis.

The Court expresses no opinion as to whether summary judgment in favor of Defendants on the timeliness defenses may be proper based on Debtors' knowledge of facts constituting the basis for this cause of action, or may be proper on some other basis, including, but not limited to,

---

[3] Following the entry of Summary Judgment Order, but prior to the Entry of Judgment, the parties designated additional materials to supplement the record (*see* Adv. D.I. 192, 193, 194, 195), and informed the Bankruptcy Court by letter that those supplemental materials were "somewhat extensive" and were not previously delivered to the Court. (*See* Adv. D.I. 196).

the knowledge and standing of Eugenia's affiliated entity, Casita, to pursue litigation against the Defendants, and/or earlier opportunities Eugenia had to gain control of the Debtors, and/or the state and federal litigation in New York. The Court further expresses no opinion as to whether summary judgment is proper with respect to Defendants' *res judicata* and collateral estoppel defenses or any other issue decided below.

## V.   CONCLUSION

For the foregoing reasons, I reverse and remand the case to the Bankruptcy Court for further proceedings not inconsistent with this memorandum opinion. An appropriate order shall issue.